IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| TERESA HALL MARSH,<br>         *Plaintiff*,<br>v.<br>VIRGINIA DEPARTMENT<br>OF TRANSPORTATION,<br>         *Defendant*. | CIVIL ACTION NO. 6:14-CV-00006<br><br>**MEMORANDUM OPINION**<br><br>NORMAN K. MOON<br>UNITED STATES DISTRICT JUDGE |

  The pro se Plaintiff alleged that her former employer, the Virginia Department of Transportation ("VDOT"), terminated her employment in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213, after she complained about mold in the Fiscal department of the Lynchburg facility, where she worked, and the affect of the mold on her health. Defendant submitted a motion to dismiss for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that the VDOT, as an arm of the state, is immune from claims filed pursuant to Title I of the ADA. I granted the motion to dismiss the ADA claims for lack of jurisdiction. However, Plaintiff also moved to amend her complaint to state a claim pursuant to § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701, and I granted the motion.

  Plaintiff filed an amended complaint, which is a near-verbatim duplication of Plaintiff's original complaint, with one notable exception: in one exhibit, Attachment A, Plaintiff replaces a reference to the ADA with a reference to § 504 of the Rehabilitation Act ("Rehabilitation Act," or "Section 504"). Otherwise, the amended complaint and attachments thereto duplicate the original complaint. Plaintiff used a local form designated for pro se plaintiffs filing a complaint under the Equal Employment Opportunity Act, 42 U.S.C. 2000e, *et seq.* ("Title VII"). However, the amended

complaint makes no reference to any claim covered by Title VII, which only covers discrimination claims based on race, color, religion, sex, or national origin.

The amended complaint is a jumble,[1] but given a careful parsing and liberal construction, Plaintiff lodges the following allegations (although she does not state how they violate the Rehabilitation Act): (1) on September 11, 2012, VDOT refused to accommodate Plaintiff's disability when it declined to relocate her to an enclosed office; (2) on December 17, 2012, VDOT denied Plaintiff a tangible employment benefit when it did not allow her to participate in "cross training" for another position; (3) on July 8, 2013, VDOT refused to accommodate Plaintiff's disability when, after granting her previous requests to relocate, it declined to relocate her a third time; and (4) on August 21, 2013, VDOT discharged Plaintiff on the basis of her disability when she was forced to go on long term disability.

At the hearing on the motion to dismiss, Plaintiff fleshed out an argument that she has been treated differently from similarly situated individuals, particularly that she has been treated

---

[1] Although district courts have a duty to construe pro se pleadings liberally, a court is not obliged to ferret through a complaint, searching for viable claims. *See Holsey v. Collins*, 90 F.R.D. 122 (D. Md. 1981) (although pro se complaint contained potentially viable claims, the court properly dismissed without prejudice under Fed. R. Civ. P. 8 since voluminous, repetitive, and conclusory complaint is not a "short and plain statement" of facts and legal claims; the court specifically observed that dismissal under Rule 8 was proper because such a complaint "places an unjustifiable burden on defendants to determine the nature of the claim against them and to speculate on what their defenses might be," and "imposes a similar burden on the court to sort out the facts now hidden in a mass of charges, arguments, generalizations and rumors"); *see also Spencer v. Hedges*, 838 F.2d 1210 (4th Cir. 1988) (unpublished table decision). In the context of Fed. R. Civ. P. 8, it is clear that a plaintiff must provide enough detail to illuminate the nature of the claim and allow defendants to respond. *See Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). And, although district courts have a duty to construe pro se pleadings liberally, a pro se plaintiff must nevertheless allege facts that state a cause of action, and district courts are not required "to conjure up questions never squarely presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (adding that "[d]istrict judges are not mind readers"); *see also Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring) (district court is not the pro se plaintiff's advocate, *sua sponte* developing statutory and constitutional claims the plaintiff failed to raise on the face of the complaint); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978) (recognizing that district courts are not expected to assume the role of advocate for the pro se plaintiff).

-2-

differently from other VDOT employees who were given the accommodation of telecommuting. Accordingly, out of an abundance of caution, I will deny the motion to dismiss the § 504 claim, and this matter will proceed to summary judgment. However, given the motion to dismiss pleading standard as refined by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009),[2] Plaintiff has not alleged a violation of any other statute, including Title VII, and the applicable one-year statute of limitations period bars any § 504 claim that occurred prior to February 7, 2013.

## I.

As previously mentioned, Plaintiff alleges that she suffers from chronic allergies that cause various respiratory ailments when she is exposed to mold spores. Plaintiff alleges she was "discharged because of [her] health" when she was placed on long term disability and accordingly removed from the VDOT payroll. As a consequence of going on long term disability, Plaintiff's position became vacant, and VDOT was authorized to fill the position.

Although the style of her complaint names the VDOT as the only Defendant, she specifies the following "[p]arties involved in [her] discharge":

> John Hays, Assistant Director and Business Administrator, Joyce Coleman, Financial and Accounting Manager, and Joyce Henry, Fiscal Supervisor were the management team supplying the information for the State EEOC investigation.

---

[2] *See also* Fed. R. Civ. P. 12(b)(6), Fed. R. Civ. P. 8. The non-moving party must have alleged facts that "state a claim to relief that is plausible on its face," *i.e.*, facts that "have nudged their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U .S. at 556). The following long-held rule still stands: "in evaluating a Rule 12(b)(6) motion to dismiss, a court accepts all well-pled facts as true and construes these facts in the light most favorable to the [non-moving party] in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

Phyllis Brice, EEO & Civil Rights Manager, Sally Blanchard, Human Resource Manager were council to the management team.

Janice F. Curtis, Affirmative Action Officer Section 504/ADA Coordinator Civil Rights Division, Shay Ponquinette, Acting Civil Rights Administrator and Sandra Norman, Assistant Division Administrator Civil Rights Division. This team reported the findings and made the determinations.

Tim McCoy, Facilities Manager, David Gardner, Facilities Technician supplied technical facility information. Shamsi Taghavi, Statewide Industrial Hygienist was responsible for air testing.

Plaintiff states that she "would like a similar job, but not in VDOT fiscal." She alleges that she has suffered unspecified damages, adding that, "[b]ecause of their failure to make accommodations available I was forced to leave my job and my medical conditioned [sic] was worsened because I continued to try to work. I seek damages in an amount maximum allowable under law."

The complaint and the record submitted in support thereof indicate that, on May 21, 2013, the U.S. Equal Employment Opportunity Commission ("EEOC") issued a "DETERMINATION" that,

> Examination of evidence showed that [Plaintiff] was a qualified individual with a disability and could perform the essential functions of her job, satisfying all job requirements established by Respondent. Evidence showed that Respondent was aware of [Plaintiff's] physical impairment. Respondent admits that it incurred costs associated with renovating [Plaintiff's] immediate work area. Nevertheless, mold continues to be present in her work area and Respondent refuses to relocate [Plaintiff] to another room or floor within its building as a reasonable accommodation, which would allow her to perform the essential functions of her job. . . . Respondent knowingly denied the [Plaintiff] the opportunity to continue performing her job duties as a member of the Finance staff by its failure to provide an effective reasonable accommodation.

The EEOC concluded that, "[b]ased on the analysis of the evidence, there is reasonable cause to believe [Plaintiff] was denied reasonable accommodation, in violation of the [ADA] of 1990, as

-4-

Case 6:14-cv-00006-NKM-RSB   Document 60   Filed 12/03/14   Page 4 of 16   Pageid#: 490

amended."[3]  "Upon the finding that there is reason to believe that a violation has occurred," the EEOC attempted "to eliminate the alleged unlawful practice by informal means of conciliation," inviting "the parties to join with it in reaching a just resolution of the matter."  However, on July 23, 2013, the EEOC issued a "NOTICE OF CONCILIATION FAILURE," notifying the parties that it was "forwarding [the] case to the Department of Justice for possible litigation or the issuance of the Notice of Right to Sue (NRTS)."

According to Plaintiff, by "[l]etter dated September 30, 2013," she "was removed from VDOT's payroll" and was informed that she "was no longer an employee."  At some point, she was informed that she would be placed on long-term disability ("LTD") on August 21, 2013, and she is apparently receiving LTD, as she complains that representatives from the LTD insurance provider "required [her] to file for permanent disability" and that they "harass [her] every month."

On November 22, 2013, the EEOC issued a NRTS to Plaintiff.

## II.

*A.*

Liberally construing the amended complaint and documents submitted in support thereof, Plaintiff claims that the VDOT refused to accommodate her disability on September 11, 2012. Plaintiff alleges that she was a financial specialist at the VDOT, and her office was located in the Fiscal department in the VDOT's Lynchburg district office. Plaintiff describes the Fiscal department as having multiple cubicles made of six-foot tall moveable partitions.  The department also contains multiple enclosed offices of unspecified size.

---

[3] Plaintiff also claimed that, because of her disability, she was denied opportunities for training.  The EEOC's Determination stated that it made no findings regarding the alleged denial of training.

Plaintiff claims that her work environment began impacting her allergies in July 2012, specifically stating that, because the VDOT discontinued the facility's cleaning contract, the facility's cleanliness deteriorated to the point that mold inflamed her chronic allergies. On August 21, 2012, Plaintiff requested to move to one of the enclosed offices, where she claimed she would not be exposed to mold on a daily basis.[4] Plaintiff submitted doctors' notes that recommended that she "be moved to another building where she is not exposed to mold on a daily basis so that she can continue working without increasing her allergy and asthma symptoms."

Thereafter, the VDOT conducted extensive testing of the facility. Plaintiff's submissions show that, in a letter dated September 11, 2012, VDOT addressed Plaintiff's requests, and that the VDOT undertook the following action to address Plaintiff's allergies:

- The Fiscal area has its own dedicated HVAC system, presenting the best conditioned and filtered space in the building.

- The VDOT added ultraviolet lighting to the return air duct to kill airborne bacteria/germ/odor.

- On Friday, August 17, 2012, the VDOT had installed a duct-mounted, fully automated dehumidification system, which operates independently of the HVAC system to maintain humidity levels.

- The VDOT hired an independent consulting company to conduct a detailed indoor air quality inspection. This inspection revealed that mold spore levels in Plaintiff's cubicle were well-within accepted standards. Indeed, the levels

---

[4] Defendant states that, on August 21, 2012, the same day that Plaintiff submitted her request to the VDOT, Plaintiff also filed a charge of discrimination with the EEOC alleging violations of the ADA. Documents submitted in support of Plaintiff's opposition show that she filed her EEOC complaint on January 28, 2013.

-6-

Case 6:14-cv-00006-NKM-RSB Document 60 Filed 12/03/14 Page 6 of 16 Pageid#: 492

in her cubicle were considerably lower (266) than outside readings (8958), indicating the air quality in her cubicle was roughly thirty-three (33) times cleaner than the outside air.

- Given that another cubicle offered even lower mold spore readings (159), Plaintiff was given the option to move into that cubicle to further accommodate her stated needs, and Plaintiff accepted the accommodation.

- The VDOT also modified the janitorial contract to include nightly vacuuming and garbage collection, but limited dusting.

- The VDOT also announced that it was exploring ways to further minimize airborne particles in the Fiscal area, which included not opening windows in the area and the cessation of entering and exiting through the rear door.

- The VDOT replaced the ceiling tiles after the completion of pipe insulation work.

Despite VDOT's efforts to improve the air quality of Plaintiff's workspace, Plaintiff alleges that she continued to experience problems with her chronic allergies and has submitted multiple doctors' notes through December 12, 2012. These treatment notes specifically state that Plaintiff "is highly allergic to dust and mold and cannot work in environments that expose her to these." Plaintiff's medical letters make no reference to the specific mold levels found in the Fiscal work station, stating only that "[s]he is able to perform in an environment that is free from dust and mold." Read literally, Plaintiff's doctors state that Plaintiff is "able to perform" only in a bubble-type environment. Such an accommodation is not reasonable, and there is no indication that such conditions exist in Plaintiff's non-work environment.

Indeed, Plaintiff's record, which includes documentation of the VDOT's testing of the

-7-

environment in the Fiscal department, shows that Plaintiff is at much greater risk to allergic reactions in the outside world than in the VDOT's Fiscal department. In any event, Plaintiff's chronic allergies required her to miss work with increasing frequency.

*B.*

In support of her claim of disparate treatment on December 17, 2012, Plaintiff alleges the following. On September 7, 2012, Plaintiff, along with others, received an email that offered an opportunity to "cross train" to perform payroll functions. On September 10, 2012, Plaintiff indicated her interest in cross training. According to Plaintiff, her immediate supervisor, Joyce Henry, denied the request on December 17, 2012, allegedly stating that she had not considered Plaintiff for cross training because Henry was concerned about Plaintiff "go[ing] out on long term disability[.]" Plaintiff further alleges that Henry disbelieved that Plaintiff suffered from chronic allergies. Plaintiff alleges that, as a consequence of not being able to participate in cross training, she was denied "opportunities for job growth, promotions or advancements."

*C.*

Regarding her claim that the VDOT refused to accommodate her disability on July 8, 2013, Plaintiff alleges that, on May 2, 2013, the EEOC conducted an onsite investigation of VDOT's facility as part of its investigation of Plaintiff's August 21, 2012, charge of discrimination. During the course of the investigation, Joyce Henry indicated that "she had no problem with allowing [Plaintiff] to move to another room to perform her job duties." Plaintiff admits that VDOT had already conducted air sampling and placed her in the area best situated for her allergies; she further admits that, following the onsite investigation, the VDOT again transferred her to another floor of the building, in the "Location and Design" department, in order to comply with her request.

Plaintiff continued to experience difficulty breathing, and speculated that her health problems

were due to the mold and dampness she perceived in Location and Design.[5] As a result, Plaintiff identified and requested that she be removed from the area in Location and Design to either the Bridge or PIMS areas. VDOT examined these requests, and determined that the Bridge area was not available, and that, although the PIMS area was available, an air quality test revealed that the mold count was higher in the other areas tested, *i.e.*, Fiscal and Location and Design. Prior to receiving the test results of the PIMS area, Plaintiff also requested sharing an existing enclosed office with another colleague or the ability to telework a couple of days a week. The VDOT determined that, due to the size of the offices involved, it could not effectively create two separate workspaces within one of those offices. Additionally, the VDOT determined that telecommuting was not a reasonable option. The results of the VDOT's examination were delivered to Plaintiff in a letter dated July 8, 2013, which concluded that,

> [u]nfortunately, despite our best efforts since August 2012, [the VDOT] is not able to provide you with the accommodation you seek for the reasons stated. VDOT has been reasonable in accommodating your requests to the point where the testing shows the air quality within the office space offered to you has a lower mold spore count than outside air. You should contact Ms. Kellie Bonner, Human Resources Manager for the Lynchburg District to discuss your options.

*D.*

Regarding Plaintiff's claims that she was unlawfully discharged on September 30, 2013, Plaintiff never submitted any challenge to the VDOT's determination of July 8, 2013. Rather, she applied for short-term disability in May 2013 on the basis of complications caused by her chronic allergies. According to Plaintiff, on July 18, 2013, the VDOT informed her that, if "no change in your medical status occur[s], you will be moved to Long Term Disability on August 21, 2013." The

---

[5] Although the amended complaint is submitted with documents in support, and her response in opposition to the motion to dismiss is submitted with a voluminous body of documents, she does not provide any medical records addressing her condition after the change in location.

notice further stated that Plaintiff would no longer be employed by the VDOT, and her position would become vacant. Plaintiff alleges that she was formally removed from the payroll on September 30, 2013, and she concludes that she was "discharged because of [her] health."

### III.

#### A.

Plaintiff filed the complaint and the amended complaint using a local form designated for the use of pro se Plaintiffs filing a complaint under the Equal Employment Opportunity Act. However, Title VII prohibits discrimination based on race, color, religion, sex, or national origin. *See* 42 U.S.C. 2000e, *et seq*. Plaintiff alleges incidents related to her health and disability concerns, but Title VII does not include disability claims. Thus, to the extent Plaintiff's use of the form alleges a Title VII charge, it must be dismissed.

#### B.

"[T]he Virginia Disabilities Act provides the limitations period for claims brought under the Federal Rehabilitation Act in Virginia because of the similarities between these acts." *A Society Without A Name v. Virginia*, 655 F.3d 342, 347 (4th Cir. 2011) (citing *Wolsky v. Medical College of Hampton Roads*, 1 F.3d 222, 225 (4th Cir. 1993)). Thus, the statute of limitations is one year, *Wolsky*, 1 F.3d at 224, and it begins to run once a claim accrues, *i.e.*, when the plaintiff "'knows or has reason to know of the injury which is the basis of the action,'" *A Soc'y Without a Name*, 655 F.3d at 348 (quoting *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975)). Plaintiff filed her original complaint on February 7, 2014. Therefore, any claim of which Plaintiff knew or had reason to know about prior to February 7, 2013, must be dismissed. As Plaintiff had knowledge prior to February 2013 of her claims that the VDOT refused to provide an accommodation on September 11, 2012,

and subjected her to disparate treatment on December 17, 2012, those claims fail to survive the statute of limitations. Although Plaintiff has alleged multiple refusals by the VDOT for a reasonable accommodation, "a refusal to accommodate is a discrete act – not an ongoing omission . . . ." *Teague v. Northwestern Mem. Hosp.*, 492 Fed. App'x 680, 684 (7th Cir. 2012); *see also Mayers v. Laborers' Health & Safety Fund of N. Am.*, 478 F.3d 364, 368 (D.C. Cir. 2007); *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 130-31 (1st Cir. 2009); *Proctor v. United Parcel Service*, 502 F.3d 1200, 1210 (10th Cir. 2007) (employer's denial of requested accommodation "constitutes a discrete act of alleged discrimination").

## IV.

As I have already mentioned, whether the VDOT offered Plaintiff reasonable accommodations is a factual determination that I will not reach at this stage.[6]

The ADA and the Rehabilitation Act employ the same standards for determining whether

---

[6] Although the EEOC determined on May 21, 2013, that the VDOT had failed to provide a reasonable accommodation, that is the EEOC's determination, which is not binding on a court. Plaintiff's own submissions support a conclusion that the VDOT engaged in a good-faith exploration of possible accommodations. The VDOT's September 11, 2012, and July 8, 2013, letters to Plaintiff addressed her requested accommodations pursuant to the VDOT's obligations under the Rehabilitation Act. As previously observed, the Fiscal area has its own dedicated HVAC system, presenting the best conditioned and filtered space in the building; ultraviolet lighting was added to the return air duct to kill airborne bacteria and odors; a duct-mounted, fully automated dehumidification system, operating independently of the HVAC system to maintain humidity levels, was installed on Friday, August 17, 2012; the janitorial contract was modified to accommodate nightly vacuuming and garbage collection, but limited dusting; it was found that airborne particles in the Fiscal area were minimized by not opening windows in the area and the cessation of entering and exiting through the rear door; and ceiling tiles were replaced after the completion of some pipe insulation work. The VDOT hired an independent consulting company to conduct a detailed indoor air quality analysis, which revealed that mold spore levels in Plaintiff's cubicle were well-within accepted standards. The levels in Plaintiff's cubicle were considerably lower (266) than outside readings (8958), indicating that the air quality in her cubicle was roughly thirty-three (33) times cleaner than the outside air. Still, another cubicle offering even lower mold spore readings (159) was offered to Plaintiff, and she accepted the offer to move to that cubicle.

-11-

unlawful discrimination has occurred. *See Myers v. Hose*, 50 F.3d 278, 281 (4th Cir. 1995).

> In a failure to accommodate case, a plaintiff establishes a prima facie case by showing "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . . ; and (4) that the [employer] refused to make such accommodations."

*Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 n. 11 (4th Cir. 2001) (quoting *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir.1999)). "Implicit in the fourth element is the . . . requirement that the employer engage in an interactive process to identify a reasonable accommodation." *Haneke v. Mid-Atlantic Capital Mgmt.*, 131 F. App'x 399, 399-400 (4th Cir. 2005). "The interactive process requires communication and good-faith exploration of possible accommodations." *Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862, 871 (4th Cir. 2007) (citation omitted).

"A disabled employee who claims that he or she is otherwise qualified with a reasonable accommodation bears the initial burden of proposing an accommodation and showing that the accommodation is objectively reasonable." *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 457 (4th Cir. 2004). "Importantly, however, the ADA and the Rehabilitation Act do not require that an employer provide a disabled employee with a *perfect* accommodation or an accommodation *most preferable to the employee*." *Fink v. Richmond*, 405 Fed. Appx. 719, 723 (4th Cir. 2010) (per curiam) (emphasis added). "[A] plaintiff must show that a reasonable accommodation existed, before a court may find that an employer's purported failure to engage in an interactive process was unlawful." *Wells v. BAE Sys. Norfolk Ship Repair*, 483 F. Supp. 2d 497, 511 (E.D. Va. 2007). If a plaintiff does not show that an employer's purported failure to engage in the interactive process resulted in failure to identify a reasonable accommodation, her claim fails as a matter of law. *Id*.

Plaintiff alleges that, despite VDOT's efforts to improve the air quality of Plaintiff's workspace, she continued to experience problems with her chronic allergies, and she submitted

multiple doctors' notes through December 12, 2012. These notes specifically state that Plaintiff "is highly allergic to dust and mold and cannot work in environments that expose her to these." However, Plaintiff's doctors' notes make no reference to the specific mold levels found in her Fiscal work station. They simply state that "[s]he is able to perform in an environment that is free from dust and mold."

To be sure, Plaintiff contends that on May 21, 2013, she identified four potential solutions that she believed would accommodate her allergies: relocation to PIMS, relocation to the Bridge, sharing an enclosed office space with a colleague, or telecommuting.[7] VDOT acknowledged these potential accommodations and vetted their reasonableness. According to Plaintiff's own submissions, VDOT conducted air quality tests of PIMS, and discovered that the mold spore count was higher in PIMS than in Fiscal or Location and Design. Given Plaintiff's allegation that exposure to mold spores exacerbates her health problems, relocating her to an area with a higher mold spore count would have been *unreasonable*. According to Plaintiff's own submissions, VDOT determined that the Bridge was unavailable for her to occupy, and Plaintiff has not challenged that assertion.[8]

---

[7] Plaintiff's own submissions show that VDOT also considered her office sharing proposal. The VDOT determined that, due to the size of the offices involved, it could not effectively create two separate workspaces out of those offices. Moreover, Plaintiff cannot allege that refusing to allow her to share an enclosed office space constitutes a refusal to accommodate, given the acknowledgment in her amended complaint that mold is present throughout the VDOT facility at some level. Plaintiff does not plausibly specify how moving from one area to another area with similar or higher mold counts would constitute a reasonable accommodation. According to Plaintiff, VDOT has relocated her twice: once to a cubicle within Fiscal that had a lower spore count, and subsequently to a separate floor in Location and Design. Although Plaintiff accepted both these relocations, she continued to complain about air quality issues. However, without more, Plaintiff cannot show how relocating her to yet another section of the VDOT facility – especially when similar efforts have failed – would help overcome her allergies. Moreover, the air quality tests showed that Plaintiff's work areas had significantly less mold that the exterior environment.

[8] "[N]on-federal employees need not exhaust administrative remedies before bringing a private action under Section 504 of the Rehabilitation Act." *Lucas v. Henrico Cnty. Sch. Bd.*, 822 F. Supp. 2d 589, 604 (E.D. Va. 2011) (footnotes omitted).

-13-

It seems that the best and possibly only option left is telecommuting. The VDOT determined that telecommuting was not a reasonable option for Plaintiff's position. There have been no decisions in the Fourth Circuit or the Virginia district courts holding that the denial of telecommuting constitutes a refusal to accommodate under with the ADA or the Rehabilitation Act. "It is hardly controversial that attendance is an essential function of most employment positions." *Vanyan v. Hagel*, ___ F. Supp. 2d ___, ___, 2014 WL 1304285, at *7 (E.D. Va. April 1, 2014) (citing *Tyndall v. Nat'l Educ. Ctrs.*, 31 F.3d 209, 213 (4th Cir. 1994) (concluding that "a regular and reliable level of attendance is a necessary element of most jobs" and that "[a]n employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual for purposes of the Americans with Disabilities Act"); *Carr v. Reno*, 23 F.3d 525, 529 (D.C.Cir.1994) (recognizing that "coming to work regularly" is "an essential function" of any job); *Law v. U.S. Postal Serv.*, 852 F.2d 1278, 1279–80 (Fed. Cir. 1988) (concluding that attendance is a minimum function of any job)); *see also Pauling v. Gates*, 2011 WL 1790137, at *4-5 (E.D. Va. May 06, 2011) (denial of telecommuting option not a violation of the Rehabilitation Act; plaintiff "failed to demonstrate that she could perform the essential functions of her position if she had been permitted to telecommute," and failed to show that co-workers who were permitted to telecommute were similarly situated); *Miller v. Danzig*, 2001 WL 34780350, at *5 (E.D. Va. June 22, 2001) (denial of telecommuting option not a violation of the Rehabilitation Act when "there was no evidence that her position could be conducted from home").

However, at the hearing, Plaintiff clarified her allegations that she could perform the essential functions of her job from home, and she challenged the VDOT's denial of permission to telecommute by stating that other VDOT associates have been permitted to telecommute in their respective positions, and she maintains that these individuals are similarly situated to her. *See*

-14-

*Haywood v. Locke*, 387 Fed. App'x. 355, 359 (4th Cir. 2010) (holding that, where "the plaintiffs have based their allegations completely upon a comparison to an employee from a non-protected class, . . . the validity of their prima facie case depends upon whether that comparator is indeed similarly situated"). Defendant disputed that those employees are similarly situated, in particular countering that Plaintiff's position requires the use of VDOT-proprietary software that is not even available on all the computers in the Lynchburg facility, which also undermines Plaintiff's contention that there were other office spaces available throughout the facility. However, these are determinations of fact that cannot be resolved at the motion to dismiss stage, and the record is insufficient for me to convert Defendant's motion to one seeking summary judgment.

## V.

Plaintiff has filed an opposition, to which she has attached 25 exhibits (in addition to the 12 attachments already included with her amended complaint). Rather than respond to Defendant's arguments, Plaintiff alleges additional facts, *e.g.*, alleging for the first time a claim of retaliation under the Rehabilitation Act and that her alleged disability includes severe allergic reactions to dust fibers.[9]

Plaintiff cannot assert new claims by raising them in her brief in opposition to the Defendant's motion to dismiss. "'[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss. To hold otherwise would mean that a party could unilaterally amend a complaint at will, even without filing an amendment, and simply by raising a point in a brief.'" *Morgan Distrib. Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) (quoting

---

[9] Plaintiff has also filed a sur-reply to Defendant's reply, asserting that she has not raised any new claim or alleged any new facts because "defendant has this information in their files," and "it is counsel's job to investigate." However, at the motion to dismiss stage, the test is upon Plaintiff's pleadings and documents filed in support thereof.

-15-

*Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)); *see also Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) (a complaint cannot be amended by a brief in opposition); *Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 917 n. 9 (E.D. Va. 2004) (quoting *Morgan*, 868 F.2d at 995); *Davis v. Cole*, 999 F. Supp. 809, 813 (E.D. Va. 1998) (refusing to consider additional allegations in response to motion to dismiss). If a plaintiff – even a pro se plaintiff – wants to add new claims, she must seek leave to amend her complaint, not slip them into an opposition brief. *See* Fed. R. Civ. P. 15(a)(2). Although a court may consider additional arguments, "the primary reason for declining such consideration is where the opposing party is prejudiced in its ability to respond to the argument." *Touchcom, Inc. v. Bereskin & Parr*, 790 F. Supp. 2d 435, 446 (E.D. Va. 2011) (citing *Clawson v. FedEx Ground Package System, Inc.*, 451 F. Supp. 2d 731, 735 (D. Md. 2006)).

## VI.

As explained herein, Defendant's motion to dismiss will be granted, in part, and denied, in part.

An appropriate order accompanies this memorandum opinion.

Entered this ___3rd___ day of December, 2014.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE